UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

RMCR, INC., a Delaware corporation,



Plaintiff,

vs.

ZAAZOOM SOLUTIONS, LLC, a Delaware limited
liability company,

Defendant.

_____

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

Plaintiff RMCR, Inc., a Delaware corporation ("RMCR"), by its undersigned counsel, hereby sues Defendant ZaaZoom Solutions, LLC f/k/a ZaaZoom Network, LLC, a Delaware limited liability company ("ZaaZoom"), and alleges as follows:

### I.   PARTIES, JURISDICTION AND VENUE

1.   Plaintiff RMCR is a Delaware Corporation, with its principal place of business at 3700 Airport Road, Suite 408, Boca Raton, Palm Beach County, Florida.

2.   Defendant ZaaZoom is a Delaware limited liability company, with its principal place of business at 7600 Double Tree Ranch Road, Suite 130, Scottsdale, Arizona 33431.

3.   This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00.

4.   General personal jurisdiction exists over Defendant because it has continuous and systematic contacts with the State of Florida and this judicial district.   Specific general jurisdiction exists because the claims in this case arise out of a Marketing Agreement and Addendum to Marketing Agreement executed by the parties, which contractual provisions

1

provide for exclusive jurisdiction in the County of Palm Beach, including the federal courts, with consent by the parties.  Copies of the Marketing Agreement and Addendum are annexed hereto as Exhibit "1."  (See Marketing Agreement, ¶ 13).

     5.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district and because Defendant is subject to this Court's personal jurisdiction.

## II.    **FACTUAL BACKGROUND**

     6.    RMCR is a business that develops and sells various credit-related consumer products, i.e. credit reports, credit monitoring services, identity theft protection.  RMCR has a contractual relationship with First Advantage, a subsidiary of First American Corporation, a New York Stock Exchange Company (symbol FAF), to obtain credit related products.  RMCR's customers provide their social security information and credit card billing information, which allows RMCR to offer the various credit reporting services to them.

     7.    ZaaZoom is a business that does internet marketing and advertising using various internet websites to generate consumer interest in the area of credit reporting services.  ZaaZoom generates customers for RMCR and the parties share the revenue generated by the products and services provided by RMCR.

     8.    ZaaZoom also has a network of affiliated website companies that also direct consumers to RMCR, to which they are paid a commission on services ordered by the consumer.

     9.    ZaaZoom does not provide any products to the consumer; it is not privy to the consumer's social security number or confidential passwords; or provide any future credit-related services to the consumer.

     10.    On October 13, 2006, RMCR and ZaaZoom entered into the Marketing Agreement whereby a strategic e-commerce marketing relationship was formed between the parties.  See Exhibit "1."  Pursuant to the Marketing Agreement, ZaaZoom agreed to promote and sell RMCR's products to consumers.

11.     A consumer directed to RMCR would pay a $5.95 processing fee to receive an initial credit report, and if desired, the consumer could receive monthly credit monitoring services for other established charges. The charges would be billed to the customer's credit card on a recurring monthly basis until terminated by the customer.

12.     To effectuate billing, RMCR had a contractual relationship with First Data Merchant Services, ("First Data"), which would process credit card transactions and remit payment to RMCR's First Data account. An RMCR shareholder personally guaranteed the obligations of the First Data account, including the payment of transaction service fees and charge backs initiated by consumers (refund requests).

13.     For convenience, RMCR permitted ZaaZoom access to the First Data account so it could receive its share of revenue under the Marketing Agreement and pay the affiliates their commissions.

14.     RMCR discovered that ZaaZoom's managing member, Gary Thomas a/k/a Gary Vojtesak, is the subject of a U.S. Securities and Exchange Commission Final Judgment finding violations of securities fraud, and enjoining Vojtesak from violating the antifraud provisions of the federal securities laws, amongst other relief. A monetary fine of $540,000.00 has also been assessed against Mr. Vojtesak. A copy of the SEC Litigation Release no. 19957 dated January 4, 2007 is annexed hereto as Exhibit "2."

15.     On April 5, 2007, RMCR provided a Notice of Termination of the Marketing Agreement ("Notice") to ZaaZoom, but ZaaZoom refused to accept RMCR's Notice and deemed it a mistake or misunderstanding and provided RMCR an opportunity to cure. Shortly thereafter, RMCR retracted said Notice on April 11, 2007, through its counsel. A copy of the April 5, 2007 Notice of Termination is annexed hereto as Exhibit "3."

16.     During this interim period (April 5-11, 2007), ZaaZoom did not materially change its position in reliance upon the Notice. ZaaZoom continued to direct hundreds of new customers to RMCR and said customers were charged the $5.95 processing fee which was delivered to RMCR's First Data account.

17.     On April 11, 2007, RMCR put ZaaZoom on notice of its concerns with regard to issues related to the Marketing Agreement and Mr. Vojtesak's access to the First Data account.

18.     On April 12, 2007, ZaaZoom threatened to pursue RMCR's purported repudiation of the Marketing Agreement and further advised RMCR that it notified First Advantage and First Data in an attempt to interfere with RMCR's contractual relationships.  ZaaZoom also indicated to RMCR that it intends to bill RMCR's customers through some independent merchant company, although ZaaZoom is not providing any services to said customers.

19.     All conditions precedent to the filing of this action have been performed, have occurred, or have been waived.

20.     RMCR has retained the undersigned counsel and has agreed to pay its attorneys a reasonable fee for said legal services.  Such fees are recoverable pursuant to Provision 20 of the Marketing Agreement.

**CLAIMS FOR RELIEF**

**COUNT I**
**(Anticipatory Breach of Contract)**

21.     RMCR repeats and realleges paragraphs "1" through "20" above, as if set forth more fully herein.

22.     RMCR and ZaaZoom entered into the Marketing Agreement and Addendum on October 13, 2006 and December 19, 2006, respectively.

23.     On April 5, 2007, ZaaZoom stopped presenting credit card transactions to First Data for recurring customer charges although it continued to present new customer charges to First Data.

24.     On April 12, 2007, ZaaZoom threatened to bill customers for services it is not providing.

25.     ZaaZoom has interfered with RMCR's ability to provide services to its customers under the Marketing Agreement by sending cease and desist letters to First Advantage and First Data.

26.     ZaaZoom has anticipatorily breached the agreement by refusing to perform its obligations under the contract.

27.     RMCR is owed a portion of the credit card fees generated by the initial processing fees and the monthly recurring charges for products and services provided to customers by RMCR.

28.     Based upon ZaaZoom's anticipatory breach of the Marketing Agreement, RMCR has suffered significant monetary damages.

## COUNT II
### (Tortious Interference with Contractual Relations)

29.     RMCR repeats and realleges paragraphs "1" through "20" above, as if set forth more fully herein.

30.     RMCR has contractual relationships with First Advantage, RMCR's credit data provider and First Data, RMCR's merchant banker.

31.     RMCR generates economic benefits from said current business relationships.

32.     ZaaZoom has notified these entities with the intention of interfering in RMCR's contractual relationships.

33.     ZaaZoom's conduct was intended to cause the breach of the relationship or it acted knowingly that its actions were likely to cause that result.

34.     ZaaZoom has no interest in either contract and the Marketing Agreement only requires RMCR to use reasonable commercial efforts to fulfill product orders.

35.     Based upon ZaaZoom's misconduct, RMCR has suffered damages.

## COUNT III
### (Tortious Interference with Business Relationships)

36.     RMCR repeats and realleges paragraphs "1" through "20" above, as if set forth more fully herein.

37.    RMCR has business relationships, and an expectancy of business relationships, with thousands of customers who are provided monthly credit related services.

38.    There is a high probability of continuing and future economic benefit to RMCR as a result of these current and prospective business relationships.

39.    ZaaZoom has threatened to interfere with said relationships through improper means and in violation of law.

40.    But for ZaaZoom's conduct, RMCR was reasonably certain to have continued its business relationships with its customers.

41.    RMCR has been proximately damaged and continues to be damaged as a result of ZaaZoom's interference.

## COUNT IV
### (Declaratory Relief)

42.    RMCR repeats and realleges paragraphs "1" through "19" above, as if set forth more fully herein.

43.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

44.    ZaaZoom believes RMCR has repudiated the Marketing Agreement based upon RMCR's April 5, 2007 Notice.

45.    RMCR believes it properly retracted its Notice on April 11, 2007.

46.    ZaaZoom continued to send customers to RMCR between April 5, 2007 and April 11, 2007, to whom RMCR provided services.  Said services were billed to the customers and funds were deposited into RMCR's merchant account by First Data.

47.    RMCR is in doubt as to its rights or other legal relations under the Marketing Agreement and seeks a declaration from this Court.

48.    Moreover, RMCR believes that the customers to whom it provides services are their customers.  RMCR is the only party privy to the customer's social security number and private logins and passwords necessary to access particular credit services.

49.     In contrast, ZaaZoom believes that the customers generated by their marketing efforts are their customers.

50.     The Marketing Agreement is silent on the subject of the ownership of the customers, thus RMCR is in doubt as to its legal relations.

51.     RMCR believes that the customers belong to them as only RMCR provides a service for which the customer is billed on a monthly recurring basis.

52.     RMCR seeks a declaration on this issue concerning the proper retention of customers.

WHEREFORE, Plaintiff RMCR, INC. requests the Court enter judgment in its favor for the following relief:

1.      Damages as a result of Defendant ZaaZoom Solutions, LLC's breach of contract, along with attorneys' fees and costs.

2.      Damages as a result of Defendant ZaaZoom Solutions, LLC's interference with contractual relations and business relations, along with attorneys' fees and costs.

3.      A declaration from the Court that the Marketing Agreement was not repudiated and that the customers generated pursuant to said agreement belong to RMCR.

4.      Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed.R.Civ.P. 38 and 57, Plaintiff RMCR, INC. demands a trial by jury of all

issues so triable.

Dated: April 16th, 2007          Respectfully submitted,
      Boca Raton, FL

Wayne H. Schwartz (Bar No.:907390)
schwartz@leeamlaw.com
LEE & AMTZIS, P.L.
5550 Glades Rd., Suite 401
Boca Raton, FL  33431
Telephone:  (561) 981-9988
Facsimile:  (561) 981-9980
**Attorneys for Plaintiff
RMCR, INC.**

# MARKETING AGREEMENT

**THIS AGREEMENT** is made as of the date last written below, by and between ZAZOOM NETWORK LLC, a Delaware limited liability company with offices at 7600 Double Tree Ranch Road, Suite 130, Scottsdale, AZ 33431 ("ZaaZoom") and RMCR INC., a Delaware corporation with offices at 3700 Airport Road, Suite 408, Boca Raton, FL 33431 ("RMCR") with reference to the following:

## WITNESSETH:

**WHEREAS,** RMCR is in the business of developing and selling various credit-related consumer products;

**WHEREAS,** ZaaZoom is in the business of online marketing and advertising;

**WHEREAS,** the parties have agreed to enter into a strategic e-commerce marketing relationship under which ZaaZoom will promote and sell certain of RMCR's products to consumers.

**NOW, THEREFORE,** for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## 1. OBLIGATIONS OF THE PARTIES

A. ZaaZoom will actively market and promote those certain products of RMCR that are identified on Schedule A, attached hereto and incorporated herein by reference (as may be amended from time to time by agreement of the parties)(the "Products"), through ZaaZoom's proprietary website, www.yourfreecreditreportonline.com, and such other websites and/or domain redirects and ZaaZoom may from time to time determine in its sole business judgment.

B. ZaaZoom shall determine in its sole discretion the price points at which it markets and sells the Products to consumers, but shall afford RMCR a right of consultation with regard thereto.

C. RMCR shall supply ZaaZoom with the Products at the costs set forth in Schedule A, and shall use reasonable commercial efforts to timely fulfill product orders resulting from ZaaZoom's marketing efforts. RMCR shall use commercially reasonable efforts to ensure that any credit report information provided to consumers is accurate, and that any personal information provided by consumers is maintained in a secure manner.

JF 1/9

Exhibit "1"

D. ZaaZoom shall be responsible for invoicing, collection ~~and customer service~~ for Product orders placed on or through its websites by consumers; RMCR shall be responsible for customer service as it relates to questions about the Products, such as the use of the credit monitoring product.

## 2. PAYMENT AND PERFORMANCE STANDARD

A. ZaaZoom shall pay RMCR the amounts set forth in Schedule A for such products it orders from RMCR within 15 days of the date of order. Payment shall be made via company check or via bank to bank wire, as determined by ZaaZoom.

B. Within ninety (90) days of execution hereof, the gross monthly receipts to RMCR from ZaaZoom under this Agreement are targeted to be not less than One Hundred Thousand Dollars ($100,000.00) per month. In the event ZaaZoom fails to meet said monthly minimum in any given monthly period following the ninety day ramp-up period, RCMR may elect to provide ZaaZoom with notice of intent to terminate this Agreement. In the event such notice is given, ZaaZoom shall be given one further monthly accounting cycle to meet the minimum sales target. Should ZaaZoom fail to generate gross sales of less than $100,000.00 to RMCR in said further monthly cycle, then RMCR shall have the right to immediately terminate this Agreement.

C. In the event that ZaaZoom fails to make timely payment to RMCR pursuant to this section 2, RMCR shall notify ZaaZoom in writing of such failure, and ZaaZoom shall then have thirty (15?0) days from such notice in which to cure. Should there be a failure to cure, then ZaaZoom shall be in default under this Agreement. In the event of default, RMCR shall, in its sole discretion, have the right to immediately terminate this Agreement.

## 3. EXCLUSIVITY

A. RMCR will not allow the Products to be sold or marketed by any other third party affiliate network [and shall not engage the services of any other online marketing company to promote or sell the Products??] during the term of this Agreement.

B. ZaaZoom will not market or promote any product or service directly competitive with the Products during the term of this Agreement.

## 4. TERM

This Marketing Agreement shall commence on the Effective Date and shall remain in effect for a period of One (1) year. Thereafter, this Marketing Agreement shall be renewed automatically on a year to year basis, unless one party notifies the other of its desire to terminate this Marketing Agreement at least sixty (60) days prior to the expiration of the Initial Term or then current renewal term, as applicable.

## 5. INTELLECTUAL PROPERTY

RMCR hereby grants ZaaZoom license to make use of such of RMCR's trademarks, service marks, trade names, product description and product logos as ZaaZoom may require to perform its marketing services hereunder. Upon expiration or termination of this Agreement, said license shall terminate. Neither party shall acquire any ownership rights in the copyrights, trademarks, service marks, trade names, trade secrets or other intellectual property of the other by virtue of this Marketing Agreement or the performance of services hereunder. Neither party will take any action or make any claim to any Intellectual Property belonging to the other party, whether during the Term or thereafter, which is inconsistent with this Paragraph.

## 6. TERMINATION

A. Either Party may terminate this Marketing Agreement, effective upon the delivery of written notice of such termination to the other party, if: (i) the other party becomes insolvent, is generally not paying its debts as such debts become due, makes an assignment for the benefit of creditors, is the subject of any voluntary or involuntary case commenced under each jurisdiction's bankruptcy laws, as now constituted or hereafter amended (which, in the case of involuntary bankruptcy, is not dismissed within thirty (30) days), or of any other proceeding under other applicable laws of any jurisdiction regarding bankruptcy, insolvency, reorganization, adjustment of debt or other forms of relief for debtors, has a receiver, trustee, liquidator, assignee, custodian or similar official appointed for it or for any substantial part of its property, or is the subject of any dissolution or liquidation proceeding; or (ii) there is a continued and material breach by the other party of any of the terms and conditions of this Marketing Agreement, provided that the party not at fault has given the other party thirty (30) days prior written notice of such breach, such other party has not remedied the breach and it is possible for the defaulting party to take such remedial action.

B. In the event of termination, for whatever reason, the parties' obligations under Section 2 and Section 10 shall survive.

## 7. REPRESENTATIONS AND WARRANTIES

A. Each party represents and warrants that it has the right, title, interest and authority to enter into this Marketing Agreement and to fully perform its obligations hereunder, and that the rights granted hereunder shall not violate the rights of any third party. Each party represents and warrants that its conduct hereunder shall conform to all applicable federal, state and local law and regulation.

B. Except for liability for indemnity, neither party will have liability for any damages other than direct damages. NEITHER PARTY MAKES ANY WARRANTY REGARDING THE QUALITY OF THEIR GOODS AND SERVICES. NEITHER PARTY MAKES ANY WARRANTY THAT ALL ERRORS OR FAILURES IN THEIR RESPECTIVE SITES WILL BE CORRECTED. THE PARTIES EXPRESSLY DISCLAIM ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. BEYOND THE WARRANTIES CONTAINED IN THIS PARAGRAPH, THE PARTIES DO NOT WARRANT THAT THEIR SITES ARE ERROR-FREE OR THAT OPERATION OF THEIR SITES WILL BE SECURE OR UNINTERRUPTED. IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY REPRESENTATION OR WARRANTY MADE TO ANY END USER OR THIRD PARTY BY THE OTHER PARTY, OR ANY AGENT OF THE OTHER PARTY. IN NO EVENT WILL EITHER PARTY BE LIABLE FOR FAILURE OF ITS NETWORK OR SUPPORT SERVICES. THESE LIMITATIONS SHALL SURVIVE AND APPLY NOTWITHSTANDING THE VALIDITY OF THE LIMITED REMEDIES PROVIDED FOR IN THIS Marketing Agreement.

## 8. INDEMNITY

Each party hereby indemnifies and holds harmless the other party, its parent, affiliated and subsidiary companies, their officers, managers, directors and employees ("Indemnities") from any and all liabilities, claims, causes of actions, suits, losses damages, fines, judgments and expenses (including reasonable attorney's fees) which may be incurred by the Indemnities arising out of any breach of the covenants, warranties, representations and agreements herein, or out of the misuse or inaccuracy of any consumer credit or personal information by the other party.

## 9. RELATIONSHIP OF PARTIES

Nothing in the Marketing Agreement shall be deemed to constitute, create, give effect to or otherwise recognize a partnership, joint venture or formal business entity of any kind;

and the rights and obligations of the Parties shall be limited to those expressly set forth herein.

## 10. CONFIDENTIALITY

A. "Confidential Information" shall mean any confidential technical data, trade secret, know-how or other confidential information disclosed by any party hereunder in writing, orally, or by drawing or other form and which shall be marked by the disclosing party as "Confidential" or "Proprietary". If such information is disclosed orally, or through demonstration, in order to be deemed Confidential Information, it must be specifically designated as being of a confidential nature at the time of disclosure and reduced in writing and delivered to the receiving party within ten (10) days of such disclosure.

B. Notwithstanding the foregoing, Confidential Information shall not include information which: (i) is known to the receiving party at the time of disclosure or becomes known to the receiving party without breach of this Marketing Agreement; (ii) is or become publicly known through no wrongful act of the receiving party or any subsidiary of the receiving party; (iii) is rightfully received from a third party without restriction on disclosure; (iv) is independently developed by the receiving party or any of its subsidiary; (v) is furnished to any third party by the disclosing party without restriction on its disclosure; (vi) is approved for release upon a prior written consent of the disclosing party; (vii) is disclosed pursuant to judicial order, requirement of a governmental agency or by operation of law.

C. The receiving party agrees that it will not disclose any Confidential Information to any third party and will not use Confidential Information of the disclosing party for any purpose other than for the performance of the rights and obligations hereunder during the term of this Marketing Agreement and/or at any time thereafter in perpetuity, without the prior written consent of the disclosing party. The receiving party further agrees that Confidential Information shall remain the sole property of the disclosing party and that it will take all reasonable precautions to prevent any unauthorized disclosure of Confidential Information by its employees. No license shall be granted by the disclosing party to the receiving party with respect to Confidential Information disclosed hereunder unless otherwise expressly provided herein.

D. Upon the request of the disclosing party, the receiving party will promptly return all Confidential information furnished hereunder and all copies thereof.

E. The Parties agree that all publicity and public announcements concerning the formation and existence of this Marketing Agreement shall be jointly planned and coordinated by and among the Parties. Neither party shall disclose any of the specific terms of this Marketing Agreement to any third party without the prior written consent of the other party, which consent shall not be withheld unreasonably. Notwithstanding the foregoing, any party may disclose information concerning this Marketing Agreement as required by the rules, orders, regulations, subpoenas or directives of a court, government or governmental agency, after giving prior notice to the other party.

F. If a party breaches any of its obligations with respect to confidentiality and unauthorized use of Confidential information hereunder, the non- breaching party shall be entitled to equitable relief to protect its interest therein, including but not limited to injunctive relief, as well as money damages notwithstanding anything to the contrary contained herein.

## 11. FORCE MAJEURE

Neither party will be liable for, or will be considered to be in breach of or default under this Marketing Agreement on account of, any delay or failure to perform as required by this Marketing Agreement as a result of any causes or conditions that are beyond such party's reasonable control and that such party is unable to overcome through the exercise of commercially reasonable diligence. If any force majeure event occurs, the affected party will give prompt written notice to the other party and will use commercially reasonable efforts to minimize the impact of the event.

## 12. NOTICE

Any notice required to be given under this Marketing Agreement shall be in writing and delivered personally to the other designated party at the above stated address or mailed by certified, registered or Express mail, return receipt requested or by Federal Express.

## 13. JURISDICTION/DISPUTES

This Marketing Agreement shall be governed in accordance with the laws of the State of Florida. All disputes under this Marketing Agreement shall be resolved by litigation in the courts of the County of Palm Beach, State of Florida, including the federal courts therein and the Parties all consent to the jurisdiction of such courts, agree to accept

service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it.

## 14. AGREEMENT BINDING ON SUCCESSORS

The provisions of the Marketing Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, their heirs, administrators, successors and assigns.

## 15. ASSIGNABILITY

Neither party may assign this Marketing Agreement or the rights and obligations thereunder to any third party without the prior express written approval of the other party which shall not be unreasonably withheld.

## 16. WAIVER

No waiver by either party of any default shall be deemed as a waiver of prior or subsequent default of the same of other provisions of this Marketing Agreement.

## 17. SEVERABILITY

If any term, clause or provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause or provision and such invalid term, clause or provision shall be deemed to be severed from the Marketing Agreement.

## 18. INTEGRATION

This Marketing Agreement constitutes the entire understanding of the Parties, and revokes and supersedes all prior agreements between the Parties and is intended as a final expression of their agreement for marketing services. This Marketing Agreement shall not be modified or amended except in writing signed by the Parties hereto and specifically referring to this Marketing Agreement.

## 19. COUNTERPARTS

This Marketing Agreement may be executed in one or more counterparts, and, upon execution of at least one counterpart by each Party, all counterparts so executed shall constitute one agreement, binding on all of the Parties herein, notwithstanding that all of the Parties herein are not signatories to the original or to the same counterpart.

## 20. ATTORNEY FEES AND COSTS

In any litigation, arbitration, or other proceeding by which one party either seeks to enforce its rights under this Marketing Agreement (whether in contract, tort, or both) or seeks a declaration of any rights or obligations under this Marketing Agreement, the prevailing party will be awarded reasonable attorney fees, together with any costs and expenses, to resolve the dispute and to enforce the final judgment.

## 21. MISCELLANEOUS

The terms and conditions of this Marketing Agreement have been negotiated at arm's length among sophisticated Parties herein. As a result, the rule of "interpretation against the draftsman" shall not apply in any dispute over interpretation of the terms and conditions of this Marketing Agreement.

**IN WITNESS WHEREOF**, the Parties hereto, intending to be legally bound hereby, have each caused to be affixed hereto its or his/her hand and seal the day indicated.

RMCR INC.                                           ZAZOOM NETWORK LLC

By: _____                          By: _____

Title: _Presiden t_                                 Title: _Member_

Date: _10/13_____, 2006                             Date: _10/13_____, 2006

## SCHEDULE A

### Product and price list

| Product | Price per unit |
|---|---|
| Credit Report | $____ |
| Identity Theft Protection | $2.30 |
| Credit Monitoring Service | $2.40 |

**RMCR INC.**

By: _____

Title: _President_

Date: _10/13_ , 2006

**ZAZOOM NETWORK LLC**

By: _____

Title: _Anum Ben____

Date: _10/13_ , 2006

9/9

## ADDENDUM TO
## MARKETING AGREEMENT
### BETWEEN ZAAZOOM NETWORK, LLC and RMCR INC.

This ADDENDUM is entered into this 19 day of december, 2006 between ZaaZoom Network, LLC a Delaware limited liability with offices at 7600 Double Tree Ranch Road Suite 130, Scottsdale AZ 33431("ZaZoom"), and RMCR, Inc., a Delaware corporation with offices at 3700 Airport Road, Suite 408, Boca Raton, FL 33431 (RMCR).

### RECITALS:

WHEREAS, RMCR is in the business of developing and selling various credit related consumer products:

WHEREAS, ZaaZoom is in the business of online marketing and advertising;

WHEREAS, the parties desire have agreed to enter into a strategic e-commerce marketing relationship under which ZaaZoom will promote and sell certain RMCR's products to consumers

NOW, THEREFORE, for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree to the following addendum to their existing Marketing Agreement date October13th, 2006:

1.      With respect to paragraphs 2.B the Marketing Agreement, it is mutually agreed that there will be an additional (90) days added to the existing time period in which ZaaZoom must meet the minimum monthly revenue requirement. The total time period from date of execution will be updated to (180) days.

2.      It is mutually agreed that a reciprocal marketing agreement with Azoogle Inc. on behalf of RMCR's products are to be effective no later than 5 business days from the signing of this addendum

3.      It is mutually agreed that the retail price to the consumer for processing fee for all of RMCR's products be amended from $5.95 to $0.00 and be effective no later than 5 business days from the signing of this addendum and shall stay in force until the parties mutually agree otherwise.

FROM :

FAX NO. :

Jan. 03 2004 05:29PM  P2

4. All the other terms and conditions of the Marketing Agreement will be applicable.

RMCR Inc.

By: _____

Title: *President*

Date: *Dec 19, 2006*

ZaaZoom Networks LLC

By: _____

Title: *MEMBER*

Date: *DEC 19*



## U.S. Securities and Exchange Commission

# U.S. SECURITIES AND EXCHANGE COMMISSION

### Litigation Release No. 19957 / January 4, 2007

***SEC v. Exotics.com, Inc., et al.* (United States District Court, District of Nevada, C.A. No. CV-S-05-0531-PMP-GWF)**

**Final Judgment Against Gary Thomas a/k/a Gary Thomas Vojtesak in Market Manipulation and Financial Fraud Case**

The Securities and Exchange Commission announced today that, on December 22, 2006, a federal district court in Nevada entered a final judgment of default against Gary Thomas a/k/a Gary Thomas Vojtesak in connection with a stock manipulation and accounting fraud scheme that occurred from 1999 to 2002. The final judgment permanently enjoins Thomas from violating the antifraud, books and records, internal accounting controls, and securities ownership reporting provisions of the federal securities laws and orders him to pay civil money penalties totaling $540,000.

The judgment against Thomas arises out of an April 21, 2005 civil action filed by the Commission against Exotics.com, Inc., a Nevada corporation based in Vancouver, British Columbia, and 12 other principal defendants and a relief defendant. The Commission alleges in its complaint that, between at least 1999 and 2002, Exotics.com, which was then an Over-the-Counter Bulletin Board company in the business of operating adult Web sites, was the subject of a stock manipulation and accounting fraud perpetrated by, among others, its officers, attorneys and outside auditors. The Commission alleges that Thomas, a founder and former CEO and director of Exotics.com's sole operating subsidiary, played a role in the scheme by, among other things, providing false and misleading financial data that was incorporated into a press release issued by Exotics.com. The Commission also alleges that Thomas, as CEO and a director of the subsidiary, failed to implement a system of internal accounting controls and to ensure that the company maintained accurate books and records. In addition, the Commission alleges that Thomas, who beneficially owned more than 15% of the total Exotics.com shares outstanding, failed to file any required beneficial ownership reports with the Commission.

The final judgment enjoins Thomas from violating the antifraud provisions of the federal securities laws, Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) and Rule 10b-5 thereunder, the books and records and internal accounting controls provisions, Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act, and the securities ownership reporting provisions, Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1 and 16a-3 thereunder. The litigation is continuing with regard to the remaining defendants and the relief defendant.

Exhibit "2"

For further information, see Litigation Release Numbers 19207 (April 28, 2005), 19645 (April 7, 2006) and 19699 (May 15, 2006).

*http://www.sec.gov/litigation/litreleases/2006/lr19957.htm*

Home | Previous Page                         Modified: 01/04/2006

4/5/2007

Jeffrey Applebaum

President

RMCR Inc.

3700 Airport Road, Suite 408

Boca Raton, Fl 33445


Dear **Gary Thomas Vojtesak;**

This letter serves as official notice that the Marketing Agreement, dated 10/2006, by and between RMCR Inc. and ZaaZoom Solutions Llc, shall be hereby considered terminated effective on April 5, 2007. Therefore, as of April 5, 2007 we are no longer bound or obligated to fulfill any terms and conditions contained within the Marketing Agreement here and as above described.

If there are any questions, please do hesitate to contact me via e-mail.

Sincerely Yours,

**Jeffrey Applebaum**

President

RMCR Inc.

Exhibit "3"

# CIVIL COVER SHEET

JS 44 (Rev. 11/05)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS
RMCR, Inc.

**DEFENDANTS**
Zaatoon Solutions, LLC

**(b)** County of Residence of First Listed Plaintiff   Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Wayne H. Schwartz
Lee + Amtzis, P.L.
5550 Glades Rd., Ste 401
Boca Raton FL 33431
(561) 981-9988

Attorneys (If Known)   07-80055

**(d)** Check County Where Action Arose:  ☐ MIAMI-DADE  ☐ MONROE  ☐ BROWARD  ☒ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

06CV80335  DMM/LRJ

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Anti trust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☒ NO   b) Related Cases ☐ YES ☒ NO
JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. § 1332   Br. of Contract

LENGTH OF TRIAL via   3   days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ over 75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE 4·16·07

722644

FOR OFFICE USE ONLY
AMOUNT 350   RECEIPT # _____   IFP _____